FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RON HARPER, KEVIN PERKINS, WILLIAM ELLIOT and ROBERT McCOY, | ) ) ) ) |
| Plaintiffs, | ) ) ) No. 87 C 5112 |
| v. | ) |
| CITY OF CHICAGO HEIGHTS and the CHICAGO HEIGHTS ELECTION COMMISSION, | ) HONORABLE DAVID H. COAR ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On February 8, 2006, this Court issued a Memorandum Opinion and Order ("Order" or "Judgment") directing the City of Chicago Heights ("City") to adopt the Perkins and McCoy plan and map (the "Individual Plaintiffs' plan and map") for the City of Chicago Heights City Council elections. Before this Court is the Defendant City of Chicago Heights' Motion to Amend Judgment or, in the alternative, to Stay Judgment Pending Appeal. For the reasons set forth below, the City's motion is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent that the Order is clarified to provide for single member districts. The City's other requests to amend the Judgment are DENIED. The motion to stay the Judgment pending appeal is GRANTED.

The City's motion raises four grounds for amending the Judgment. First, the City admittedly repeats an argument previously raised: that voting age population, not total population, is the proper measure for determining whether a redistricting plan complies with the

-1-

"one person, one vote" requirement. The City raised this argument in its Brief in Support of Using Voting Population Data; its Response and Objections to the Special Master's Report; its Objections to the Stipulation by Plaintiff Class to Accept the Map Filed by Individual Plaintiffs; and its Response to the Court's Order Dated September 6, 2005. The Order of February 8, 2006 explains why the Court has consistently rejected the argument. See Order at 9-12, 14-15, 18. It is not, therefore, a grounds for amending the Judgment.

Second, the City finds fault with this Court's attention to the "one person, one vote" principle from equal protection case law when the original Complaint "did not assert independent violations of equal protection, but rather, specific violations of Section 2 of the [Voting Rights Act]." Def.'s Mot. to Amend J. at 2. This grievance does not supply a basis for amending the Judgment either: any remedy imposed by this Court must accord with the Constitution and with state law so long as complying with state law does not violate the Constitution. See Harper v. City of Chicago Heights, 223 F.3d 593, 601 (7th Cir. 2000). Accordingly, this Court directed the Special Master to recommend a map containing districts of substantially equal population--a requirement, as the Order makes clear, of both equal protection case law and Illinois law. See Order at 5 n.4 & 8.

The City's third argument is multifold. Perhaps most importantly, it indirectly calls attention to the confusion that may have been caused by the Order. The Order provided that "the Perkins and McCoy plan and map (the 'Individual Plaintiffs' plan and map') be adopted." See Order at 1, 20. That was incorrect: the Order should have said that the Individual Plaintiffs' map was approved, but their plan (which calls for the election of *two* aldermen per district) was to be

amended to provide for the election of *one* alderman per district, i.e., single member districts. The Order is hereby altered to clarify this point.

The City argues directly that the Order causes confusion because it acknowledges any remedy must follow state law but nonetheless adopts a plan containing single member districts, which are contrary to state law. The City is correct that the Illinois Municipal Code provides for multimember districts. See 65 Ill. Comp. Stat. 5/3.1-20-10(a); 5/3.1-20-15 (providing for fourteen aldermen elected from seven wards in a city the size of Chicago Heights). The City is also correct that the Seventh Circuit has reminded this Court to follow state statutory prescriptions. See Harper, 223 F.3d at 601; Perkins v. City of Chicago Heights, 47 F.3d 212, 217 (7th Cir. 1995). The Seventh Circuit, however, has also held that this Court must defer to the City's preference for single member districts. See Harper, 223 F.3d at 602. Because the inconsistency between the requirements of the Illinois Municipal Code and the remedy in this case is bred by adherence to the Seventh Circuit's directive, it is not a basis for amending the Judgment.

The City also claims to be confused because this Court deferred to the City's preference for single member districts but did not defer enough to the City to adopt its map. As explained in the Order, however, the City's map did not satisfy the Court's guideline that all districts contain substantially equal population. See Order at 8-12, 19.

The City further argues that the form of government approved by this Court cannot be implemented without a public referendum. In Perkins, the Seventh Circuit held that modifications to Illinois statutory forms of government normally require voter approval. See Perkins, 47 F.3d at 217. The seven-ward map adopted by the Court's Order is not a modification

of Illinois law since the Municipal Code provides for seven wards in a city the size of Chicago Heights. See 65 Ill. Comp. Stat. 5/3.1-20-10(a); 5/3.1-20-15. The only characteristic of the plan that would appear to need voter approval is the election of one alderman per ward instead of two. See 65 Ill. Comp. Stat. 5/3.1-20-10(a) (providing for fourteen alderman in a city exceeding 20,000 but not 50,000). For several reasons, however, it is not clear that a referendum would be necessary to implement this modification of state law. First, the Seventh Circuit instructed this Court to craft a remedy that acceded to the City's preference for single member districts. Second, in a 1995 referendum vote, Chicago Heights voters approved single member districts. See Order at 2-3. That approval, of course, was for a different map containing a different number of districts (six) than the map approved by the Court's February 8, 2006 Order. But because of that referendum, voters in Chicago Heights currently elect six aldermen from six single member wards. It is not clear (and the parties have not briefed the issue) why that 1995 referendum would not tolerate a different map and different number of districts while retaining the single member districts. Third, the City has consistently demonstrated a preference for single member districts. The City submitted a plan to the Special Master, which he considered, calling for seven single member districts; and the City repeatedly, albeit unsuccessfully, asked this Court to force the Special Master to consider a subsequent proposal calling for six single member districts. Thus, as far as this Court is concerned, no referendum is necessary because a seven-ward map is consistent with Illinois law and single member districts are consistent with the Seventh Circuit's directive, the referendum vote in 1995, and every preference the City has demonstrated to date.

As the fourth and final ground for amending the Judgment, the City argues that this Court should not have adopted the Individual Plaintiffs' map because it allegedly gerrymanders three white alderpersons out of their wards. The City admits, however, that it has never before raised this issue with the Court. Indeed, the City should have aired this concern in its Objections and Response to the Special Master's Report or its Objections to the Stipulation by Plaintiff Class to Accept the Map Filed by Individual Plaintiffs. At present, the issue is untimely and is not a basis for amending the Judgment, especially given this Court's approval of the Special Master's findings with regard to racial gerrymandering. See Order at 15-16.

Finding no basis among the City's four arguments for amending the Judgment, the Judgment is amended only to the extent that it is clarified to provide for single member districts. The City's other requests to amend the Judgment are denied.

The City has also moved to stay the Judgment pending appeal. Granting a motion to stay judgment pending appeal is in the discretion of the Court. Fed. R. Civ. P. 62(c). This case concerns important voting rights issues that go to the heart of a democratic society. The risk of prolonging this hoary case is outweighed by the need for certainty. The motion to stay the Judgment pending appeal, therefore, is granted.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **March 16, 2006**